# UNITED STATES DISTRICT COURT
for the
## Western District of Kentucky
## Louisville Division

| | |
|---|---|
| Paula Rogers<br>   *Plaintiff*<br><br>v.<br><br>CBCInnovis, Inc.<br>   *Defendant*<br>Serve:<br>   Corporation Service Company<br>   421 West Main Street<br>   Frankfort, KY 40601<br><br>Credit Bureau Systems, Inc.<br>   *Defendant*<br>Serve:<br>   William Mark Edwards<br>   100 Fulton Court<br>   Paducah, KY 42001<br><br>Equifax Information Services, LLC<br>   *Defendant*<br>Serve:<br>   Corporation Service Company<br>   421 West Main Street<br>   Frankfort, KY 40601<br><br>LexisNexis Risk Solutions, Inc.<br>   *Defendant*<br>Serve:<br>   CT Corporation System<br>   306 West Main Street, Suite 512<br>   Frankfort, KY 40601 | Case No.  3:19-cv-1-DJH |

## COMPLAINT and DEMAND FOR JURY TRIAL

### INTRODUCTION

1. This is a complaint by Plaintiff Paula Rogers for damages against Defendants for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") and/or the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*

## JURISDICTION AND VENUE

2. Jurisdiction of this court arises under 15 U.S.C. § 1681p. Venue is proper because the nucleus of relevant facts and events that Plaintiff occurred within Jefferson County, Kentucky which is located within this District.

## PARTIES

3. Plaintiff Paula Rogers is a natural person who resides in Jefferson County, Kentucky and a "consumer" within the meaning of the FCRA, as defined at 15 U.S.C. § 1681a(c).

4. Defendant CBCInnovis, Inc. ("CBCInnovis") is a foreign corporation with its principal place of business located at 250 E Broad Street 18th Floor Columbus, OH 43215. CBCInnovis is registered to do business with Kentucky Secretary of State and is a "consumer reporting agency" within the meaning of the FCRA.

5. Defendant Credit Bureau Systems, Inc. ("CBS") is a Kentucky for-profit corporation whose principal place of business is located at 100 Fulton Court Paducah, KY 42001 registered to do business with the Kentucky Secretary of State and engaged in the business of collecting debts from Kentucky citizens and consumers on the behalf of creditors.

6. CBS is a "debt collector" as defined by the FDCPA at 15 U.S.C. §1692a(6) because it regularly collects consumer individual debts of natural persons who are citizens of Kentucky using instrumentalities of interstate commerce or the mails in its business the principal purpose of which is the collection of debts. CBS is also a "furnisher of information" to credit reporting agencies within the meaning of the FCRA.

7. Defendant Equifax Information Services, LLC ("Equifax") is a foreign limited liability company whose principal place of business is located at 1550 Peachtree Street NW Atlanta, GA 30309 registered to do business with Kentucky Secretary of State and a "consumer reporting agency" within the meaning of the FCRA.

8. Defendant LexisNexis Risk Solutions, Inc. ("LexisNexis") is a foreign corporation, with its principal place of business located at 1000 Alderman Dr. Alpharetta, GA 30005 registered to do business with Kentucky Secretary of State. LexisNexis is a "consumer reporting agency" within the meaning of the FCRA.

## STATEMENT OF FACTS

I. **Facts Relating to LexisNexis Risk Solutions, Inc. and CBCInnovis, Inc.**

9. On August 7, 2014 Plaintiff Paula Rogers ("Rogers") was named as a defendant in

the case of *Mohana Arla MD, PSC v. Paula Rogers,* Jefferson District Court, Jefferson County, Kentucky, case number 14-C-009820 (the "State Court Lawsuit").

10. The State Court Lawsuit sought to collect a disputed medical debt from Ms. Rogers.

11. The Jefferson District Court entered a default judgment against Ms. Rogers in the State Court Lawsuit on October 8, 2014 (the "Default Judgment").

12. Ms. Rogers paid the Default Judgment off in full in February 2015.

13. A Notice of Satisfaction of Judgment was entered in the State Court Lawsuit on February 18, 2015 and is a public record that is freely and readily available to all.

14. On or about October 31, 2018, Ms. Rogers and her husband applied for a home loan with Northpointe Bank ("Northpointe").

15. As part of Ms. Rogers's loan application, Northpointe requested, obtained, reviewed and relied on Ms. Rogers's consumer credit report from Defendant CBCInnovis, Inc. ("CBCInnovis").

16. Ms. Rogers's CBCInnovis credit report was a tri-merged credit report that obtained credit data and information from the big three Consumer Reporting Agencies ("CRA's"): Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union").

17. Equifax, Experian, and Trans Union announced that starting in July 2017 they would stop reporting judgment information on their consumer credit reports unless certain criteria were met.[1]

18. In the wake of the CRAs' announcement, CBCInnovis "aligned" with Defendant LexisNexis Risk Solutions, Inc. ("LexisNexis") to provide and include public-record data, including judgment information in its credit report products.

19. The Rogers' October 31, 2018 CBCInnovis credit report falsely and inaccurately reported that the Default Judgment in the State Court Lawsuit was still in place and a positive amount was still due and owing.

20. LexisNexis was the noted source of the false and inaccurate information concerning

---

[1]. https://www.usatoday.com/story/money/2017/03/13/reports-credit-scores-soon-exclude-some-debts-liens/99113572/

the Default Judgment.

21. The public-record information LexisNexis published to CBCInnovis was a "consumer report" within the meaning of the FCRA.

22. Northpointe Bank denied Ms. Rogers's loan application in whole or in part because the Default Judgment was still being reported as due and owing in the public-record section of Ms. Rogers's CBCInnovis tri-merged credit report, which also included reporting from LexisNexis in the CBCInnovis tri-merged report published to Northpointe Bank.

23. The reporting of the Default Judgment as unsatisfied was inaccurate in violation of the FCRA, 15 U.S.C. § 1681e(b). CBCInnovis failed to follow reasonable procedures to assure maximum possibility accuracy in the preparation of Ms. Rogers's credit reports and credit files it publishes and maintains concerning Ms. Rogers. If CBCInnovis had reasonable procedures in place, it would have discovered a Notice of Satisfaction of Judgment had been filed in the State Court Lawsuit *before* publishing Ms. Rogers' credit report to Northpointe in connection with the Rogers' home-loan application.

24. CBCInnovis failed to maintain reasonable procedures designed to avoid violations of the FCRA in connection with publishing credit information concerning Ms. Rogers and the satisfied Default Judgment.

25. The reporting of the Default Judgment as unsatisfied by LexisNexis was inaccurate in violation of the FCRA, 15 U.S.C. § 1681e(b). LexisNexis failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Ms. Rogers's credit reports and credit files it publishes and maintains concerning Ms. Rogers. If LexisNexis had reasonable procedures in place, it would have discovered a Notice of Satisfaction of Judgment had been filed in the State Court Lawsuit *before* publishing Ms. Rogers' credit report to Northpointe in connection with the Rogers' home-loan application.

26. LexisNexis failed to maintain reasonable procedures designed to avoid violations of the FCRA in connection with publishing credit information concerning Ms. Rogers and the satisfied Default Judgment.

II. **Facts Relating to Credit Bureau Systems, Inc. and Equifax Information Services, LLC**

27. Upon review of the October 31, 2018 CBCInnovis credit report, Ms. Rogers discovered a tradeline furnished by Defendant Credit Bureau Systems, Inc. ("CBS") in connection with a medical debt that she did not recognize (the "CBS Medical Debt"). Trans Union, LLC

("Trans Union") and Defendant Equifax Information Services, LLC ("Equifax") were identified as CBCInnovis's sources of information for the CBS tradeline.

28.     The CBS Medical Debt was incurred for personal, family, or household purposes, which makes the CBS Medical Debt a "debt" within the meaning of the FDCPA.

29.     CBS furnished negative credit information about Ms. Rogers and the CBS Medical Debt for purposes of collecting a "debt" from her within the meaning the FDCPA. *Sullivan v. Equifax, Inc.*, CIV.A. 01-4336, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002) ("[R]eporting a debt to a credit reporting agency is 'a powerful tool designed, in part, to wrench compliance with payment terms.'").

30.     Ms. Rogers sent dispute letters dated November 6, 2018 to Trans Union and Equifax that disputed the CBS Medical Debt.

31.     Receipt of Ms. Rogers's dispute letters triggered Trans Union and Equifax's duty under 15 U.S.C. § 1681i(a)(2) to send CBS notice of Ms. Rogers's dispute within five-business days of receipt of Ms. Rogers's dispute.

32.     CBS's receipt of Ms. Rogers's dispute letter from Trans Union and Equifax triggered CBS's duty under 15 U.S.C. § 1681s-2(b)(1) to conduct a reasonable investigation of Ms. Rogers's dispute.

33.     After processing Ms. Rogers's dispute Equifax did not update Ms. Rogers's credit report and file to reflect that she had disputed the CBS Medical Debt.

34.     CBS failed to conduct a reasonable investigation into Ms. Rogers's disputes concerning the negative credit information concerning Ms. Rogers and the credit information that CBS was furnishing to Equifax.

35.     CBS falsely verified the accuracy of the disputed negative credit information to Trans Union and Equifax.

36.     CBS failed to note in its investigative results to Equifax that Ms. Rogers had disputed the CBS Medical Debt.

37.     Alternatively, CBS did note in its investigative results to Equifax that Ms. Rogers had disputed the CBS Medical Debt, but Equifax failed to note that Ms. Rogers had disputed the CBS Medical Debt in the credit reports it published to its users and subscribers.

38. As a result of CBS's failure to conduct a reasonable investigation of Ms. Rogers's disputes and its failure to note that Ms. Rogers had disputed the CBS Medical Debt, Ms. Rogers suffered actual damages in the form of out-of-pocket expenses, lowered credit score and denial of credit.

39. Alternatively, as a result of Equifax's failure to note that Ms. Rogers had disputed the CBS Medical Debt, Ms. Rogers suffered actual damages in the form of out-of-pocket expenses, lowered credit score and denial of credit.

### III. Facts Relating to Equifax Information Services, LLC

40. In connection with applying for a home loan Ms. Rogers requested and obtained copies of her credit report from each of the three major CRA's including her individual credit report published by Defendant Equifax Information Services, LLC ("Equifax").

41. Upon review of her individual Equifax credit report Ms. Rogers discovered that the Kentucky Higher Education Student Loan Corp. ("KHESLC") was furnishing credit information concerning seven student loans, each of which had been closed and transferred.

42. Ms. Rogers' Equifax credit report incorrectly and inaccurately reported that the "status" of each of the seven KHESLC student loans was over 120 days past due. Per the Consumer Reporting Resource Guide ("CRRG") "status" on an Equifax credit report represents the coding for "account status" per the CRRG and per CRRG the "status" of each of the seven KHESLC student loans should have been reported as "Account Transferred" or "Student Loan—Assigned to Government."

43. On November 6, 2018, Ms. Rogers sent a dispute letter to Equifax disputing the seven KHESLC tradelines.

44. In particular, Ms. Rogers's dispute letters disputed the status of the seven tradelines as being incorrectly and inaccurately reported as 120 days or more past due.

45. Equifax had a statutory duty under 15 U.S.C. § 1681i(a)(2) to forward a copy of Ms. Rogers's dispute to KHESLC.

46. Receipt of notice of Ms. Rogers's dispute triggered the KHESLC's duty under 15 U.S.C. § 1681s-2(b) to reinvestigate the negative credit information it was furnishing to the CRAs concerning Ms. Rogers.

47. Ms. Rogers's Equifax post-dispute credit report continued to incorrectly and

inaccurate report that the status of the seven KHESLC tradelines was 120 days or more past due.

48. Equifax failed to conduct a reasonable investigation of Ms. Rogers's dispute as evidenced by the fact that it failed to correct the status of the KHESLC student loans.

49. Ms. Rogers's Equifax post-dispute credit reports continued to incorrectly report the current status of the KHESLC student loans as 120 days past due.

50. Equifax should have reported the current status of the KHESLC student loans as "Account Transferred" or as "Student Loan—Assigned to Government."

51. The reporting of the KHESLC student loans as 120 days or more past due is inaccurate and misleading, and further, the misreporting of the KHESLC student loans with a current status of 120 days or more past due negatively affects Ms. Rogers's credit score and her credit rating.

52. The misreporting of the account status as being currently 120 days or more past due on Ms. Rogers's credit report makes the delinquency appear more recent than it actually is which creates a greater negative impact on Ms. Rogers's credit score than if the account status was being reported correctly.

53. Further, after the KHESLC closed and transferred the student loans the loans were refinanced and paid in full. Payment in full of the KHESLC student loans after transfer compounds the error of reporting the current status of the KHESLC student loans as 120 days or more past due. Ms. Rogers's credit reports now show different current statuses for the same loans: the KHESLC tradelines each being incorrectly and inaccurately being reported as 120 days or more past due and the transferred student loans being reported as paid and closed.

54. As a result of Equifax's failure to conduct a reasonable investigation of Ms. Rogers's dispute Ms. Rogers suffered actual damages in the form of a lowered credit score and denial of credit.

55. Equifax violated the FCRA by failing to conduct a reasonable investigation of Ms. Rogers's disputes, and by failing to establish and/or follow reasonable procedures designed to assure the maximum possible accuracy of consumer credit reports by systematically misreporting the Pay Status of closed and transferred accounts.

# CLAIMS

## I.    Claims against CBCInnovis, Inc.

56.    Plaintiff Paula Rogers restates and incorporates each of the allegations in the preceding paragraphs as if fully set forth herein.

57.    Defendant CBCInnovis, Inc. ("CBCInnovis") violated the FCRA, 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning Ms. Rogers and the status of the Default Judgment in the public-record section of its credit reports.

58.    Trans Union and Equifax both use or used LexisNexis as their source for public-record information. CBCInnovis was on clear notice that the failure to update public records with respect to judgments was problematic for Defendant LexisNexis Risk Solutions, Inc. ("LexisNexis") which according to the CBCInnovis tri-merged credit report was the sources of the false and inaccurate information concerning the Default Judgment. Numerous lawsuits in this and other jurisdictions concerning this same issue have been filed against Trans Union and Equifax for reporting false and inaccurate public-record information. CBCInnovis's conduct, actions and inactions were willful rendering CBCInnovis liable under 15 U.S.C. § 1681n for Plaintiff's actual damages, statutory damages, punitive damages, attorney's fees and costs.

59.    In the alternative, CBCInnovis's conduct, actions and inactions were negligent rendering CBCInnovis liable to Plaintiff under 15 U.S.C. § 1681o for actual damages, attorney's fees and costs.

## II.    Claims against LexisNexis Risk Solutions, Inc.

60.    Plaintiff Paula Rogers restates and incorporates each of the allegations in the preceding paragraphs as if fully set forth herein.

61.    Defendant LexisNexis Risk Solutions, Inc. ("LexisNexis") violated the FCRA, 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning Ms. Rogers and the status of the Default Judgment.

62.    Trans Union and Equifax both use or used LexisNexis as their source for public-record information. LexisNexis was on clear notice that the failure to update public records with respect to judgments was problematic for LexisNexis, which according to the CBCInnovis tri-merged credit report the sources of the false and inaccurate information concerning the Default Judgment. Numerous lawsuits in this and other jurisdictions concerning this same issue have been

filed against Trans Union and Equifax for reporting false and inaccurate public-record information. LexisNexis's conduct, actions and inactions were willful, rendering LexisNexis liable under 15 U.S.C. § 1681n for Plaintiff's actual damages, statutory damages, punitive damages, attorney's fees and costs

63. In the alternative, LexisNexis's conduct, actions and inactions were negligent rendering LexisNexis liable to Plaintiff under 15 U.S.C. § 1681o for actual damages, attorney's fees and costs.

### III. Claims against Credit Bureau Systems, Inc.

#### A. Violations of the FDCPA

64. The foregoing acts and omissions of Defendant Credit Bureau Systems, Inc. ("CBS") constitute violations of the FDCPA. CBS's violations include, but are not limited to, violation of 15 U.S.C. § 1692e(8) by reporting credit information to one or more consumer reporting agencies that failed to note that Ms. Rogers had disputed the CBS Medical Debt.

#### B. Violations of the FCRA

65. The foregoing acts and omissions of Defendant Credit Bureau Systems, Inc. ("CBS") violate the FCRA.

66. After being informed by Equifax that Ms. Rogers disputed the accuracy of the information it was furnishing to Equifax concerning Ms. Rogers and the CBS Medical Debt, CBS willfully failed to conduct a proper investigation of Ms. Rogers' dispute filed with Equifax that CBS was furnishing false negative credit information about Ms. Rogers and the CBS Medical Debt.

67. CBS willfully failed to review all relevant information purportedly provided by Equifax to CBS in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

68. CBS willfully failed to direct Equifax to delete inaccurate information about Ms. Rogers pertaining to the CBS Medical Debt as required by 15 U.S.C. § 1681s-2(b)(C).

69. CBS failed to note in its response to Equifax that Ms. Rogers had disputed the CBS Medical Debt as required by the FCRA.

70. Ms. Rogers has a private right of action to assert claims against CBS arising under 15 U.S.C. § 1681s-2(b).

71. CBS is liable to Ms. Rogers for the actual damages she has sustained by reason of

its violations of the FCRA, in an amount to be determined by the trier of fact or up to $1,000.00 in statutory damages, whichever is greater, and punitive damages in an amount to be determined by the trier of fact and her reasonable attorney's fees pursuant to 15 U.S.C. § 1681n.

72. In the alternative, CBS is liable to Plaintiff Rogers for the actual damages she has sustained as result of its willful violation of the FCRA, in an amount to be determined by the trier of fact and her reasonable attorney's fees, pursuant to 15 U.S.C. § 1681o.

## IV. Claims against Equifax Information Services, LLC

73. The foregoing acts and omissions by Defendant Equifax Information Services, LLC ("Equifax") constitute violations of the FCRA.

### A. Violation of 15 U.S.C. § 1681c(f)

74. Ms. Rogers disputed the CBS tradeline with Equifax.

75. CBS had a duty under 15 U.C.S. § 1681s-2(a)(3) to notify Equifax of Ms. Rogers's dispute after CBS was notified, by Equifax, of Ms. Rogers' dispute.

76. After being notified by CBS that Ms. Rogers had disputed the tradeline CBS was furnishing to Equifax, Equifax had a duty under 15 U.S.C. § 1681c(f) to indicate in the credit reports that it published to its users, including to Ms. Rogers, that Ms. Rogers had disputed the tradeline furnished by CBS.

77. Ms. Rogers's post-dispute Equifax credit reports failed to indicate that Ms. Rogers had disputed the CBS tradeline.

78. Equifax willfully, or alternatively, negligently, violated the Fair Credit Reporting Act, 15 U.S.C. § 1681c(f).

79. Equifax is liable to Ms. Rogers for the actual damages she has sustained by reason of its violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages, whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, all pursuant to 15 U.S.C. § 1681n.

80. In the alternative, Equifax is liable to Ms. Rogers for the actual damages she has sustained by reason of its violation of the FCRA, in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, pursuant to 15 U.S.C. § 1681o.

  **B.**  **Violation of 15 U.S.C. § 1681i(a)(1)**

  81.  Equifax violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable investigation of Ms. Rogers's disputes concerning the KHESLC student-loan tradelines.

  82.  As a result of Equifax's failure to conduct a reasonable investigation of Ms. Rogers's dispute, Equifax continued to inaccurately report that the current status of the KHESLC student loans was 120 days or more past the due date. Ms. Rogers suffered actual damages in the form of a lowered credit score and denial of credit. Ms. Rogers also suffered frustration, irritation, and emotional upset and distress.

  83.  Equifax's conduct, actions and inactions were willful, rendering Equifax liable to Ms. Rogers under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs.

  84.  In the alternative, Equifax's conduct, actions and inactions were negligent rendering Equifax liable to Ms. Rogers under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

## PRAYER FOR RELIEF

  **WHEREFORE**, Plaintiff Paula Rogers requests that the Court grant her the following relief:

  1.  Award Plaintiff the maximum amount of statutory damages against each Defendant under the FCRA and/or the FDCPA;

  2.  Award Plaintiff her actual damages;

  3.  Award Plaintiff punitive damages against each Defendant under the FCRA, 15 U.S.C. § 1681n;

  4.  Award Plaintiff her attorney's fees, litigation expenses and costs;

  5.  A trial by jury; and

6.       Any other relief to which Plaintiff may be entitled.

          Submitted by:

          /s/ James R. McKenzie
          James R. McKenzie
          *James R. McKenzie Attorney, PLLC*
          115 S. Sherrin Ave. Suite 5
          Louisville, KY 40207
          Tel:   (502) 371-2179
          Fax:  (502) 257-7309
          E-mail: jmckenzie@jmckenzielaw.com

          James H. Lawson
          *Lawson at Law, PLLC*
          115 S. Sherrin Avenue, Suite 5
          Louisville, KY 40207
          Tel:   (502) 473-6525
          Fax:  (502) 473-6561
          E-mail: james@kyconsumerlaw.com